IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

OHIO RIVER VALLEY ENVIRONMENTAL
COALITION, INC., HOMINY CREEK
PRESERVATION ASSOCIATION, INC., and
CITIZENS COAL COUNCIL,

        Plaintiffs,

v.                                      CIVIL ACTION NO. 3:04-0084

GALE A. NORTON,
Secretary of the Interior,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ohio River Valley Environmental Coalition Inc. (OVEC), brought this action to challenge the approval by the Defendant, Secretary of the Interior, of changes in West Virginia's surface mining regulations proposed by the state's Department of Environmental Protection (WVDEP). The parties have submitted cross-motions for summary judgment, and the matter is ripe for decision.

Surface Mining Control and Reclamation Act of 1977 (SMCRA) authorizes the Secretary of Interior, through the Office of Surface Mining (OSM), to review and approve or disapprove state regulatory programs for controlling surface mining operations. 30 U.S.C. § 1211(c)(1). If a state's regulations are approved, that state is given primary jurisdiction and authority over the regulation of surface mining. 30 U.S.C. § 1253. With limited exceptions, a state attains exclusive jurisdiction to regulate surface mining when its regulatory program is approved by the Secretary. West

Virginia's regulatory program was approved by OSM many years ago and has been changed, with OSM's approval, on numerous occasions. In 1988 the state proposed, and OSM approved, regulatory definitions of "cumulative impact" and "cumulative impact area" as part of the regulations dealing with the hydrologic aspects of surface mining. In 2001, the state sought OSM's approval of changes in these regulations. Following public notice and comment periods, the Secretary approved the state's changes in its regulatory program. Plaintiffs seek judicial review of that decision.

Plaintiffs challenge the Secretary's approval for two reasons. First, Plaintiffs assert that the Secretary erred by refusing to reopen the public comment period to receive additional information, including the transcript of a deposition taken of a state regulatory official. Plaintiffs claim this deposition testimony by a WVDEP official should have been considered by the Secretary before deciding whether to approve the state's changes. Next, Plaintiffs argue that the Secretary's approval was arbitrary, capricious, and otherwise inconsistent with federal law. Plaintiffs believe that the amendments were approved by the Secretary despite the absence of a reasoned explanation or rational basis for the changes, rendering her action arbitrary and capricious. Plaintiffs also contend the changes result in a regulatory program which is less effective that federal regulations in meeting the requirements of SMCRA, in violation of 38 U.S.C. § 1253 as implemented by OSM through its regulations. 30 C.F.R. § 5.

This review is conducted pursuant to the Administrative Procedures Act (APA) which authorizes the Court to set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. The administrative record was filed with the Court on July 7, 2004.

**Standard of Review**

Federal administrative agencies are subject to the provisions of the Administrative Procedure Act, which establishes the scope of judicial review of challenged agency actions. The Act instructs a reviewing court to "hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because of their expertise in their particular fields, a presumption of validity attaches to an agency's actions. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)(overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). As a result, the "ultimate standard of review is a narrow one." *Id.* at 416. In applying this standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id*. The court also considers whether the agency articulated a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). This connection must be established even where, as here, an agency is rescinding a rule it was not originally required to enact. The Supreme Court has held that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42 (1983). This reasoned analysis must be provided by the agency itself at the time of the action,

as "courts may not accept appellate counsel's *post hoc* rationalizations for agency action." *Id*. at 50. If the court finds the agency has established this rational connection, the action must be upheld even if the court disagrees with the agency's decision. "A reviewing court may not substitute its judgment for that of the agency." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). The final inquiry is whether the agency followed the required procedures. *Overton Park*, 401 U.S. at 417.

The plaintiffs here challenge the Secretary's approval of two revisions to the West Virginia regulatory program as well as her refusal to reopen the comment period to allow the plaintiffs to supplement the record. The Secretary contends that the standard articulated by the plaintiffs improperly asks the Court to consider whether the amendments render the state program less effective than the federal program. Although the Secretary accurately describes that standard as the one she was to employ in evaluating the proposed amendments, it has some relevance to this Court's review. The Surface Mining Control and Reclamation Act requires state rules and regulations to be consistent with federal regulations, a requirement defined by the Secretary's regulations to mean that state laws and regulations can be no less effective than federal regulations. Accordingly, if the Secretary demonstrated a "clear error of judgment" in approving state program amendments that failed to adhere to this requirement, the Court must find her action unlawful. *Overton Park*, 401 U.S. at 416.

**Comment period**

Section 553 of the APA outlines the procedures agencies must follow in the informal rulemaking process. 5 U.S.C. § 553. Agencies must provide notice of proposed rules or

amendments and "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553. The APA does not specify how long the comment period must be. A federal regulation governing state program amendments, however, requires a comment period of at least 30 days. 30 C.F.R. § 732.17(h)(3). The initial comment period for the state program amendments in this case was 30 days, which was extended by 15 days. The comment period was later reopened for 15 days and again extended for 15 days.

After this second period expired, the plaintiffs requested that the comment period be reopened to allow submission of a transcript of the deposition of a WVDEP official conducted in another case. The plaintiffs contended that the deposition was critical to the decision-making process because it included information on the state's purposes for amending the program and the way it would implement the amendments. The agency declined to reopen the comment period. The plaintiffs now argue that the Secretary's refusal to reopen the comment period was arbitrary and capricious. The Court finds no merit to that argument.

Courts may not impose procedural requirements upon administrative agencies beyond those required by the Constitution or by statute. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519 (1978). "Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies should be free to fashion their own rules of procedure and methods of inquiry permitting them to discharge their multitudinous duties.' " *Id*. at 543 (*quoting FCC v. Schreiber*, 381 U.S. 279, 290 (1965)). The agency here provided ample opportunity for public comment on the proposed changes to the state program. The deposition testimony the plaintiffs want to submit would not alter the basis previously offered by the state,

which was the focus of the comment period. The fact that the federal agency was a party to the action in which the deposition occurred does not require that the comment period be reopened, even if the testimony contradicted the state's asserted basis for amending its program. If the state fails to implement its rules consistent with the approved amendments, the federal agency can take action at that time. For this Court to find that the comment period should have been reopened would be a clear violation of the *Vermont Yankee* holding that procedural requirements for rulemaking are essentially left to the discretion of the agency. *Id*. at 524. Accordingly, the Court cannot conclude that the agency's refusal to reopen the comment period was arbitrary, capricious or an abuse of discretion.

**Secretary's Approval**

In her published approval of the amendments at issue, the Secretary relied on the state's rationale, including WVDEP's clarification letter of July 1, 2003. The Secretary discussed the absence of counterpart federal regulations, noting there is "no federal requirement" to define cumulative impact or material damage. The amendments delete the definition of cumulative impact and contain a new definition of material damage which the Secretary characterizes a matter of state discretion. SMCRA requires states, before issuing any surface mining permits, to find that a proposed mining operation has been designed to prevent material damage to the hydrologic balance.[1]

---

[1] 30 U.S.C. § 1260 requires "...the assessment of the probable cumulative impact of all anticipated mining in the area on the hydrologic balance specified in section 1257(b) of this title has been made by the regulatory authority and the proposed operation thereof has been designed to prevent material damage to hydrologic balance outside permit area." This assessment is referred to as the cumulative hydrologic impact assessment, or CHIA.

(continued...)

In adopting the original federal regulations, the Secretary decided to leave gauging material damage to the states, and no particular standard or measurement is mandated. Instead, the federal regulations defer to the states to decide what constitutes material damage and how to measure it. Other states' programs, like the federal regulations, apparently leave this term undefined and depend on their regulatory agencies to implement this aspect of the CHIA.

Here, WVDEP moved away from the specific, numeric standard of predetermined thresholds and ranges to define and measure material damage. This definition relied on the water quality standards adopted by the state and required by the Clean Water Act.[2] In its place, WVDEP substitutes what it characterizes as a "narrative" standard which defines material damage as "long-term or permanent change" which has "significant adverse impact" on "existing conditions and uses." The state's clarification letter of July 1, 2003, asserts that this new language provides "some objective criteria" in determining that material damage will be minimized or prevented and that the narrative standard will diminish the "unguided discretion" of the permit reviewer. This reasoning is suspect. As Plaintiffs vehemently argue, these terms substitute a subjective, and potentially inconsistent, judgment in place of an objective standard. "Long-term change" and "significant adverse impact" are not defined and cannot surpass "predetermined thresholds and ranges" as

---

[1](...continued)

[2] While on its face consideration of the deleted cumulative impact language may appear severable from the new material damage definition, the two are connected. For instance, the deleted language refers to the possibility that even where an operation complies with effluent standards, material damage may result from co-mingling with discharges from other mining operations if together they exceed water quality standards. The new definition of material damage would ostensibly tolerate this result so long as any "long-term or permanent" change would not have a "significant adverse impact" on other users. The Secretary merely notes that the state will use both water quality limits and the use-based narrative standards but does not otherwise address this aspect of the amendments.

objective criteria. The narrative element of the new standard likely increases subjectivity and unguided discretion in the process.  This criticism, that the new definition is vague, was made by OSM when it requested the clarification letter from WVDEP.  The Secretary's subsequent approval fails to provide a reasoned analysis to explain how this  subjective standard with vague terms can insure that the state program amendments are not less effective than federal regulations.  She offers no substantive discussion for how this language may be interpreted or applied by permit reviewers, enforcement officials, mining operators or affected parties.  Neither WVDEP nor the Secretary provide a sufficient explanation of how this new definition of material damage would constitute the objective standard claimed by WVDEP.

    The Secretary cannot simply rubber-stamp amendments; she must analyze and explain how she determined that proposed amendments will meet federal standards.  The Court **FINDS** that the Secretary's approval of these amendments, as no less effective than federal regulations and otherwise consistent with SMCRA, was a clear error of judgment.

    The Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** Defendant's Motion.  The Court **VACATES** the Secretary's approval of the amendments and **REMANDS** the matter to the Secretary for further proceedings consistent with this opinion.  The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and to publish it on the Court's web site.

        ENTER: September 30, 2005

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE